**Not For Publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CONCEBIDA MONTILLA GUERRERO | : | Civil Action No. 05-1709 (FSH) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | June 19, 2006 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**HOCHBERG, District Judge.**

This matter is opened before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner"), pursuant to Section 205(g) of the Social Security Act, as amended ("Act"), 42 U.S.C.A. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court affirms the Commissioner's denial of Disability Insurance Benefits ("DIB").

## I. BACKGROUND

Plaintiff worked as a home health aid until 1994. Plaintiff alleged that she became disabled on May 13, 1994 due to arthritis of her hips and left foot, neuropathy of the feet and

legs, and a hernia.[1] On March 8, 2000, Plaintiff filed an application for DIB and Supplemental Security Income ("SSI") benefits. SSI benefits were awarded. Plaintiff indicated in a reconsideration disability report dated January 5, 2001 that she also suffered from a mental infirmity. (Tr. 163-66) Both claims for SSI and DIB were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 23, 2002.

The ALJ considered medical evidence from independent consultative medical examinations. An independent mental status examination conducted by Dr. Joseph Buceta in October 2000 noted that Plaintiff reported only mild depression. (Tr. 265) Plaintiff denied feelings of worthlessness or hopelessness, and reported no phobias, compulsions or obsessions. Plaintiff also reported that she was not seeing a psychiatrist or a therapist. Dr. Buceta noted that Plaintiff was well-orientated, exhibited adequate memory, and her speech was coherent and goal directed. A later independent mental status examination conducted in December 2001 by Dr. Michael Block noted that Plaintiff presented psychomotor depression and related in a depressed fashion. (Tr. 330) Plaintiff was not oriented, and was unable to demonstrate adequate memory. Dr. Block identified severe limitations in Plaintiff's capacity for understanding and for memory, and severe limitations with regard to concentration, persistence, and performing tasks at pace.

---

[1] Plaintiff alleged only physical impairments when she completed a disability report at the start of the administrative process. (Tr. 77) Plaintiff did not mention any mental impairment until her reconsideration disability report dated January 5, 2001. (Tr. 163-66) Plaintiff's physical impairments are generally not at issue. However, Plaintiff argues that given her mental impairment, the ALJ failed to obtain a psychiatric medical expert to determine the onset date of Plaintiff's disability, and the ALJ failed to call a vocational expert to determine if she is able to perform other work functions. *See infra*.

Dr. Block also identified moderate to severe limitations in Plaintiff's social interaction and adaptation. (Tr. 331)

The ALJ also considered the medical evidence from state agency medical consultants.[2] State agency physicians found insufficient evidence prior to Plaintiff's date last insured ("DLI") to establish a claim for DIB.[3] (Tr. 144, 179) State agency physicians found that Plaintiff's condition resulted in: (1) mild restriction of activities of daily living, (2) mild difficulties in maintaining social functioning, and (3) moderate difficulties in maintaining concentration, persistence or pace. (Tr. 154, 207) Accordingly, state agency physicians concluded that Plaintiff does not suffer any two marked or any one extreme psychological limitations, and thus does not satisfy the criteria of § 12.04 of the Listings of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). (Tr. 154, 207)

The ALJ concluded that the Plaintiff was entitled to receive SSI benefits as of the ALJ's established date of total disability, February 10, 2001. However, the ALJ denied Plaintiff's claim for DIB, finding that there was insufficient medical evidence to show that the Plaintiff was disabled under the meaning of the Act prior to February 10, 2001.

---

[2]State agency medical consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions in issuing decisions. 20 C.F.R. §§ 404.1512(b)(6) and 416.912(b)(6).

[3]When a claimant seeks DIB, the claimant must demonstrate that his disability commenced at a time when she met the insured status requirements of 42 U.S.C. § 423(c). 42 U.S.C. §§ 423(a)(1)(A) and (c)(1); *Alexander v. Shalala*, 927 F.Supp 785, 792 (D.N.J. 1995) (citing *Kane v. Heckler*, 776 F.2d 1130, 1131, n.1 (3d Cir. 1985)). In contrast, insured status requirements are not a consideration for SSI eligibility. *Alexander*, 927 F. Supp. at 793, n.3. In the instant case, Plaintiff's insured status expired December 31, 1999. (Tr. 14, 63)

After denial of DIB, Plaintiff filed the instant action seeking a remand to the Commissioner for reconsideration.

**II.    DISCUSSION**

**A.    Standard for Finding of Disability**

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D).  An individual will be deemed to be disabled only if the impairment is so severe that she is not only unable to do her previous work, but cannot considering her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the individual is presently engaged in substantial gainful activity.  If so, the individual will be found not disabled without consideration of his medical condition.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

  Step Two: Severe Impairment.  If there is no substantial gainful activity, plaintiff must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

  Step 3: Listed Impairment.  If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Part 404, Subpt. P or is the equivalent of a Listed Impairment.  If the individual has such an impairment, the Commissioner will find the individual disabled.

  Step 4: Residual Functional Capacity.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite her impairment, the individual has the residual functional capacity to perform his past relevant work.  Residual functional capacity is defined as what the claimant can still do despite her limitations.  If she does have the capacity to perform past work, the individual will be found not disabled.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

  Step 5: Other Work.  Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education and past work experience to determine if she is able to perform other work functions.  If she cannot do so, the individual will be found disabled.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

  The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Secretary of Health and Human Services*, 722 F. 2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his past relevant work and that jobs which

the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

**II.     Standard of Review for Disability Benefits**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion. 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla of evidence. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it." *Snee v. Secretary of Health and Human Services*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

**III.    Analysis**

At Step 1, the ALJ determined that Plaintiff had not performed substantial gainful activity since her application for benefits in 2000. At Step 2, the ALJ determined that the record established the existence of a "severe" impairment involving anxiety, depression, and

osteoarthritis after March 3, 2000. At Step 3, the ALJ determined that Plaintiff's "severe" impairment did not meet or medically equal the Listed Impairments.

At Step 4, the ALJ determined that Plaintiff had the Residual Functioning Capacity to perform sedentary work, but was unable to perform her past relevant work as a home health aid. Thus, at Step 5, the burden shifted to the Commissioner to show that other work existed in significant numbers in the national economy that Plaintiff could perform given her residual functional capacity, age, education and past work experience.

The ALJ determined that given Plaintiff's age, limited education, unskilled work background, and her residual functional capacity for sedentary work, the Medical-Vocational Guidelines (the "Grids") directed a finding of "disabled" as of February 10, 2001. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Thus, the ALJ established Plaintiff's disability onset date to be February 10, 2001. However, prior to February 10, 2001, the ALJ concluded that the medical evidence indicated that Plaintiff was capable of a full range of sedentary work, and would be found "not disabled" under the Grids and SSR 96-9p.[4]

Plaintiff argues that the ALJ's decision that Plaintiff was not disabled prior to February 10, 2001 was not supported by substantial evidence and that: (1) the ALJ failed to obtain a psychiatric medical expert to determine the onset date of Plaintiff's mental disability, and (2) the ALJ failed to call a vocational expert, and challenges the ALJ's reliance on the Grids when

---

[4]The ALJ concluded Plaintiff was considered a "younger individual" prior to Plaintiff's fiftieth birthday, and given Plaintiff's residual functional capacity, age, education and past work experience, the Grids would direct a finding of "not disabled."

7

presented with non-exertional impairments.[5]

**A.      Determination of the Onset Date of Plaintiff's Disability**

Plaintiff asserts that the ALJ failed to correctly follow Social Security Ruling ("SSR") 83-20 guidelines for determining the onset of her impairment.[6] SSR 83-20 mandates that "[t]he starting point in determining the date of onset of disability is the individual's statement as to when disability began." SSR 83-20 also provides that when "determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." According to SSR 83-20, "[t]he medical evidence serves as the primary element in onset determination." SSR 83-20 concerns not just the determination of the onset of a plaintiff's condition, but when such condition became disabling.

In the instant case, the record is devoid of any medical evidence to support Plaintiff's alleged onset date, *i.e.*, May 13, 1994. In order to receive DIB, Plaintiff must show that she was insured at the time of onset of her disability. Plaintiff points to no evidence in the record to demonstrate the existence of a mental impairment that precluded her from performing substantial gainful activity for a continuous period of twelve months on her alleged onset date in May 13,

---

[5]Plaintiff also argues that the ALJ should recite all the evidence of record in issuing her decision. Plaintiff relies on *Cotter v. Harris* for support. 642 F.2d 700 (3d Cir. 1981). In the instant case, the ALJ concurred with the evidence of record, and Plaintiff pointed to no evidence to support alleged onset date of May 13, 1994. *See infra*. Thus, the instant case is distinguishable from *Cotter*, where the ALJ rejected, ignored, or failed to credit probative evidence in favor of the plaintiff. *Cotter*, 642 F.2d at 706-07.

[6]SSR 83-20 states the policy and describes the relevant evidence to be considered when establishing the onset date of a disability under Title II of the Act. Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. ' 422.408; *see also Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984).

1994, or at any time prior to the expiration of her insured status, *i.e.*, December 31, 1999. Additionally, there is no medical evidence in the record that Plaintiff was disabled due to a mental impairment at any time prior to her established onset date of February 10, 2001.

SSR 83-20 notes that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] for a continuous period of at least 12 months . . . ." In the instant case, medical evidence from independent medical examinations reflects a worsening of Plaintiff's mental status, consistent with the ALJ's established onset date of February 10, 2001. The October 2000 independent mental status examination conducted by Dr. Buceta revealed that Plaintiff suffered only mild depression. It is not until Dr. Block's independent mental status examination in December 2001 that Plaintiff's impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity for a continuous period of at least 12 months. In addition, state agency physicians found insufficient evidence of a disabling mental condition prior to Plaintiff's DLI to establish a claim for DIB. Thus, the medical evidence of record provides substantial evidence for the ALJ's conclusion that Plaintiff's disability onset date was February 10, 2001.

Plaintiff asserts that SSR 83-20 required the ALJ to seek advice from an expert psychiatric medical advisor regarding the onset of her disability. Plaintiff relies on the Third Circuit's decisions in *Walton v. Halter*, 273 F.3d 703 (3d Cir. 2001) and *Newell v. Commissioner of Social Security*, 347 F.3d 541 (3d Cir. 2003). SSR 83-20 requires an ALJ to call a psychiatric medical expert where the impairment is slowly progressing, the alleged onset date is far in the past, and adequate medical records for the most relevant period are not available. *Walton*, 273

F.3d at 709; *Newell*, 374 F.3d at 549. In such cases, the ALJ should call a medical expert in order to infer the onset date. However, Plaintiff's reliance on *Walton* and *Newell* is misplaced. *Walton* addressed bipolar disorder, a condition that is both progressive and difficult to diagnose. *Walton*, 243 F.3d at 705-08. In addition, the alleged onset date was more than twenty years prior to the hearing, and medical records were sparse and conflicting. *Id.* The court in *Walton* also found that the ALJ did not sufficiently explain his disregard for one physician's opinion that the plaintiff's disability existed prior to the expiration of his insured status. *Id.* at 710. Similarly, in *Newell*, the ALJ failed to consider evidence supplied by plaintiff to support an earlier disability onset date. *Newell*, 374 F.3d at 547. In the instant case, there is no evidence that Plaintiff's depression a slowly progressing condition like those considered in *Walton* and *Newell*. In addition, Plaintiff provided no evidence that her disability existed prior to the expiration of her insured status, nor did the ALJ ignore or reject any such evidence. Accordingly, the Court finds substantial evidence in the record to support the ALJ's conclusion that Plaintiff's disability onset date was February 10, 2001.

**B.     The Need for a Vocational Expert**

Plaintiff challenges the ALJ's reliance on the Grids when presented with non-exertional impairments to determine that Plaintiff could perform other work existing in significant numbers in the national economy. Plaintiff contends that the ALJ's ruling runs contrary to the Third Circuit's opinion in *Sykes v. Apfel*, in which the court stated that "the Commissioner cannot determine that nonexertional impairments do not significantly erode occupations base under medical-vocational guidelines ("grids") without taking additional vocational evidence establishing that fact." 228 F.3d 259, 264-265 (3d Cir. 2000).

10

However, in the recent decision in *Allen v. Barnhart*, the Third Circuit ruled that the Commissioner may rely on an SSR as a replacement for the testimony of a vocational expert. 417 F.3d 396 (3d Cir. 2005). In the instant case, the ALJ relied on SSR 96-9p. The ALJ concluded that the medical evidence prior to February 10, 2001 indicated that Plaintiff was capable of a full range of sedentary work, and thus would be found "not disabled" under the Grids and SSR 96-9p.

In *Allen*, the Third Circuit stipulated that "there must be a 'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the [SSR] dictates that such nonexertional limitations impact the [occupational] base." *Allen*, 417 F.3d at 406. Here, there is such a fit. SSR 96-9p provides that the basic mental demands of competitive, remunerative, unskilled work include the abilities to (1) understand, remember, and carry out simply instructions, (2) make judgments that are commensurate with the functions of unskilled work, (3) respond appropriately to supervision, co-workers and usual work situations, and (4) deal with changes in a routine work setting. According to SSR 96-9p, a "*substantial* loss of ability to meet any one of several basic work-related activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and justify a finding of disability." (emphasis added). The medical evidence in the record indicates no substantial loss of ability to meet any one of several basic work-related activities outlined in SSR 96-9p prior to the ALJ's established disability onset date of February 10, 2001. Thus, there was no need for the ALJ to call a vocational expert, and there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff would be found "not disabled" under the Grids and SSR 96-9p prior to February 10, 2001.

**IV.     Conclusion**

For the aforementioned reasons, and after a careful review of the record, the Court finds substantial evidence to support the ALJ's decision to deny Plaintiff DIB.  There was no need for the ALJ to call an expert psychiatric medical advisor to infer Plaintiff's disability onset date, and the ALJ properly relied on the Grids to determine that Plaintiff could perform other work existing in significant numbers in the national economy.  Accordingly, this Court will affirm the ALJ's decision to deny Plaintiff DIB.

/s/ Faith S. Hochberg<br>Hon. Faith S. Hochberg, U.S.D.J.