<u>NOT FOR PUBLICATION</u>

RECEIVED

SEP - 4 2007

AT 8:30_____
WILLIAM T. WALSH___M
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **IN RE: INSURANCE BROKERAGE ANTITRUST LITIGATION** | : | **MDL No. 1663** |
| **APPLIES TO ALL ACTIONS** | : | **Civil Action No. 04-5184 (GEB)** |
| **IN RE: EMPLOYEE-BENEFIT INSURANCE BROKERAGE ANTITRUST LITIGATION** | : | **Civil Action No. 05-1079 (GEB)** |
| **APPLIES TO ALL ACTIONS** | : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the motions of defendants Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, Inc., and Gallagher Benefit Services, Inc. (collectively, the "Gallagher Defendants") and class plaintiffs ("Plaintiffs") for Final Approval of the Proposed Class Action Settlement Agreement. A fairness hearing was held on July 24, 2007. This Court, having considered the parties' written submissions and oral argument, and for the reasons discussed herein, will grant the Motions for Final Approval of the Proposed Class Action Settlement Agreement.

## I.     BACKGROUND

This action involves numerous class actions filed in August 2004 against various

insurance brokers and insurers. The class actions allege violations of federal and state antitrust laws, the Racketeer Influences and Corrupt Organizations Act ("RICO") and common law. (Class Pls.' Br. 1). These class actions have been consolidated into the present action. The Gallagher Defendants were added as defendants in December 2004. Id. at 3. With respect to the Gallagher Defendants, Class Plaintiffs allege antitrust, RICO and common law violations based upon *inter alia*:

> (1) undisclosed contracts, agreements, arrangements and understandings about the payment of commissions to the Gallagher Defendants that were contingent upon, among other things, the Gallagher Defendants['] placement of a particular number of policies or dollar value of premium with the Insurer Defendants, and (2) practices by which the Gallagher Defendants participated in the suppression or elimination of competition in the sale of insurance by coordinating bids for insurance policies, allocating insurance markets and customers and raising or stabilizing premium prices about competitive levels.

Id. at 1. The Court is now called on to consider the fairness of the proposed settlement in the amount of $28,000,000.

By Orders entered on May 25, 2005 and July 17, 2006, the Court appointed the law firms of Miller Faucher and Cafferty LLP (now Cafferty Faucher LLP), and Whatley Drake & Kallas, LLC, respectively, as Co-Lead Counsel for Plaintiffs. These Orders provide that Co-Lead Counsel shall, among other things, conduct settlement negotiations on behalf of Plaintiffs in this Action and enter into binding agreements with respect to settlement. (Order, May 25, 2005; Order, July 17, 2006).

The Gallagher Defendants were also the subject of investigations conducted by various state attorneys general and state departments of insurance for possible anti-competitive activities. (Gallagher Defs.' Br. 4). On May 18, 2005, Gallagher, whose principle place of business and

2

headquarters are located in the State of Illinois, entered into an Assurance of Voluntary Compliance ("AVC") with the Attorney General of Illinois and the Director of the Illinois Division of Insurance, and a Stipulation and Consent Order ("SCO") with the Director of the Illinois Division of Insurance. Id. at 5. Under the terms of these agreements, Gallagher voluntarily implemented various business reforms and transferred $26,962,500 into a fund from which amounts were distributed to certain qualifying Gallagher customers. Id.

On December 29, 2006, the Gallagher Defendants and Plaintiffs entered into a Stipulation of Settlement (Stipulation of Settlement between Class Plaintiffs and Arthur J. Gallagher & Co. Defendants ("Settlement Agreement"), Dec. 29, 2006). Amendments to the Settlement Agreement were filed on February 28, 2007 (including the submission of a Plan of Allocation), March 20, 2007, and again on May 11, 2007. (First Amendment to Settlement Agreement, Feb. 28, 2007; Second Amendment to Settlement Agreement, March 20, 2007; Third Amendment to Settlement Agreement, May 11, 2007). The Settlement Agreement is intended to resolve all claims that have been, or could have been, asserted in this action by Plaintiffs against the Gallagher Defendants and in Belmont Holdings Corp. v. Marsh & McLennan Cos., Inc., et. al., and a putative state class action, Village of Orland Hills v. Arthur J. Gallagher & Co., Case No. 00-CH-13855, pending in the Circuit Court of Cook County, Illinois. (Gallagher Defs.' Br. 1-2).

The proposed Settlement Agreement would create a fund of $28,000,000 ("Fund"), to be paid to those insureds who fall within the definition of the Settlement Class.[1] Id. at 6. In addition, the Settlement Agreement contains several non-monetary provisions in which the

---

[1]    Unless otherwise specifically defined herein, terms relating to the definition of the Settlement Class have the same meaning as attributed to them in the accompanying Order approving the Settlement.

3

Gallagher Defendants have agreed to reform certain alleged business practices. Id. at 7. These include prohibitions on accepting contingent compensation, "pay to play" arrangements, "bid rigging" arrangements, reinsurance leveraging, and inappropriate use of wholesale insurance brokers. Id. The Settlement Agreement also requires Gallagher Defendants to make certain disclosures to customers and to implement certain training for its employees. Id. In addition, pursuant to the Settlement Agreement, and subject to approval by this Court, Gallagher Defendants have agreed to pay not more than $8,885,000 for Plaintiffs' attorneys' fees, litigation expenses, and incentive awards for each of the twenty-five named Plaintiffs. (Class Pls.' Br. 11-12). These payments would be in addition to other sums paid by Gallagher Defendants under the Agreement and would not diminish the Fund. Id. at 12. Finally, the Gallagher Defendants will pay all the administrative costs associated with implementing the Settlement Agreement in addition to the amounts described above. (Gallagher Defs.' Br. 7-8).

Prior to reaching an agreement, the parties engaged in extensive discovery. Counsel for the Plaintiffs obtained approximately 70 million pages of documents from various defendants and third parties, including roughly 1.4 million pages of documents and volumes of data from the Gallagher Defendants alone. (Class Pls.' Br. 2). During this period, Plaintiffs' counsel also met and conferred with defense counsel numerous times and conducted approximately 181 depositions in connection with the action. Id.

On April 13, 2007, this Court entered an Order Preliminarily Certifying a Class for Settlement Purposes and Preliminarily Approving Proposed Settlement ("Preliminary Approval Order"). The Court preliminarily found that, for purposes of settlement, the class satisfied the certification requirements of Fed. R. Civ. P. 23(a), (b)(3). (Preliminary Approval Order 3-4).

4

With respect to the proposed Settlement Agreement, the Court preliminarily found that:

> (a) the Settlement Agreement resulted from extensive arm's-length negotiations and was concluded only after Class Counsel had conducted broad discovery and the Settling Parties had consulted independent experts about the issues raised by the Complaints, and (b) the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant sending notice of the Action and Settlement Agreement to Settlement Class Members and holding a full hearing on the Settlement.

Id. at 7-8. Pursuant to these findings, the Court set a date of July 24, 2007 for a Fairness Hearing, issued requirements for notifying Class Members, and set a date of June 29, 2007 for the filing of exclusions and objections to the proposed Settlement Agreement. Id. at 8, 11-13, 15-16.

Pursuant to the Preliminary Approval Order, on May 16, 2007, notice of the proposed Settlement Agreement was sent via first class mail to approximately 288,182 potential Settlement Class Members by an Administrator, Complete Claims Solutions, Inc. (Gallagher Defs.' Br. 9). Notice was also published twice in all editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*, and once in the newspaper with the highest circulation in each of the fifty states and the District of Columbia, as well as in *Business Insurance Magazine* and *Risk Management Magazine*. Id. Notice and relevant documents were also published on the internet at *www.gallaghersettlement.com*, the websites of other Class Counsel, and the website of the Gallagher Defendants. Id. Finally, a toll-free telephone number was established that allowed callers to request relevant materials relating to the proposed Settlement Agreement. Id. at 10.

Of the 288,182 mailed notices, 206 entities or individuals requested exclusion from the proposed Settlement Agreement. (Gallagher Defs.' Reply Br. 2.) Three additional requests were received after the deadline set forth in the Preliminary Order. Id. In total, two objections were

filed in opposition to the proposed Settlement Agreement.  Id. at 4.  On July 24, 2007 the Court

held a Fairness Hearing.[2]


## II.    DISCUSSION

### A.    Fairness of Class Action Settlement and Plan of Allocation

#### 1.    Standard for Judicial Approval of Settlement in Class Action

Under Federal Rule of Civil Procedure 23(e), the district court must approve any

settlement in a class action, and direct reasonable notice to all class members who may be bound

by such settlement.  Fed. R. Civ. P. 23(c).  Approval is warranted only if the settlement is "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e).  Acting as a fiduciary responsible for protecting

the rights of absent class members, the court is required to "independently and objectively

analyze the evidence and circumstances before it in order to determine whether the settlement is

in the best interest of those whose claims will be extinguished."  In re Cendant Corp. Litig., 264

F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.

Liab. Litig., 55 F.3d 768, 782 (3d Cir. 1995)).  This determination rests within the sound

discretion of the court.  Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

In Girsh, the Third Circuit identified nine factors that a district court should consider

when determining whether a proposed class action settlement warrants approval.  Girsh, 521 F.2d

at 157.  These factors include: (1) "the complexity, expense and likely duration of the litigation";

---

[2]      Van Enterprises, Inc., one of the two objectors, filed a Notice of Intention to Appear at
the Fairness Hearing, but failed to appear.  The Court notes that the start of the Hearing was
delayed in anticipation of counsel's arrival.  The Court also notes that counsel for Van
Enterprises, Inc. was aware of the date and location of the Hearing.

(2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Id. The burden of proving that these factors weigh in favor of approval rests on the proponents of a settlement. The Girsh factors, however, "do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement." In re AT&T Corp. Sec. Litig., 455 F.3d 160, 165 (3d Cir. 2006).[3] The Court may take these other factors into consideration, if appropriate, in order to determine whether final approval is warranted.

### 2.    Application of the Girsh Factors

Based on the facts and circumstances of this case, the Court concludes that factors one through five overwhelmingly weigh in favor of approval of settlement, and factors six through nine weigh slightly or moderately in favor of approval. Significantly, the Court finds that none of the Girsh factors suggest that the proposed settlement should not be approved. The Court will

---

[3]    Other relevant factors include: "[T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved - or likely to be achieved - for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998).

now discuss its reasons for arriving at this conclusion.

### a.   Complexity, Expense and Likely Duration of the Litigation

The first factor concerning the complexity, expense and duration of litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." Cendant, 264 F.3d at 233 (quoting GM Trucks, 55 F.3d at 812). This action involves federal and state antitrust laws, RICO and common law. An antitrust action is clearly a complex action to prosecute. In re Linerboard Antitrust Litig., MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, *34 (E.D. Pa. June 2, 2004). In addition, the claims involve alleged conspiracy violations by dozens of large brokerage and insurance companies. Thus, this case involves highly complex legal and factual issues. The case has been litigated for over two years, and this Settlement was reached with one of 30 defendant groups after extensive negotiations. (Class Pls.' Br. 18). Over 70 million pages of documents were produced to Plaintiffs, and Class Counsel conducted over 181 depositions. Id. at 2. To proceed with litigation of this matter would undoubtedly become a costly and lengthy process for all parties. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535-36 (3d Cir. 2004) (finding this factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial"). This proposed settlement provides an immediate benefit to the Plaintiffs. Accordingly, the Court finds that the first Girsch factor weighs strongly in favor of approval.

### b.   Reaction of the Class to the Settlement

Notice of the proposed Settlement Agreement was mailed to 288,182 Class Members on May 16, 2007. (Gallagher Defs.' Br. 9). Notice was published two times in all editions of *The*

8

*New York Times*, *The Wall Street Journal* and *USA Today*, one time in the newspaper with the highest circulation in each of the 50 states and in the District of Columbia, and in *Business Insurance* and *Risk Management Magazine*. Id. The Administrator posted pertinent information and documents on the website created for the settlement as well as on Co-Lead Counsel's website, certain of Class Counsel's websites and at *www.gallaghersettlement.com*. Id. The Administrator also established a toll-free telephone bank to respond to inquiries by Settlement Class Members. Id. at 10.

In response, 209 individuals/entities requested exclusion, three of which were filed after the Court-established deadline of June 29, 2007. (Gallagher Defs.' Reply Br. 2).   In addition, only two Class Members filed objections, and only one of the two objectors raises any argument that questions the settlement itself. Id. As the Third Circuit articulated in In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005), "such a low level of objection is a 'rare phenomenon.'"   Consequently, the Court concludes that the small number of objections by Class Members to the settlement award strongly weighs in favor of approval.

### c. The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider this factor to evaluate "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." Cendant, 264 F.3d at 235 (quoting GM Trucks, 55 F.3d at 813). The Court notes at the outset that this action has been vigorously litigated for over two years. (Gallagher Defs.' Br. 20). During this time, a considerable amount of time, money and effort was expended by all parties in

9

litigating the action.

The parties engaged in extensive discovery in this action. Plaintiffs reviewed over 70 million documents, including 1.4 million from the Gallagher Defendants, and conducted 181 depositions in connection with the action. (Class Pls.' Br. 2). Based upon the amount of time Counsel expended in negotiations and the extent of the discovery process, the Court finds that Counsel had a thorough appreciation for the merits of the case prior to settlement. Accordingly, the Court concludes that this factor weighs strongly in favor of settlement.

### d.    Risks of Establishing Liability

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." Cendant, 264 F.3d at 237 (quoting GM Trucks, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components, Inc. Sec. Litig., 166 F.Supp. 2d 72, 89 (D.N.J. 2001) (quoting Prudential Ins., 148 F.3d at 319).

To succeed at trial, Plaintiffs must prove the elements of their federal antitrust and RICO claims. On April 5, 2007, this Court issued an Order granting Defendants' motions to dismiss Plaintiffs antitrust and RICO claims. Plaintiff's claims were consequently dismissed without prejudice. Although the Court permitted Plaintiffs one final opportunity to file second amended complaints and supplemental statements, Plaintiffs themselves recognize that these claims face increasing risk from the difficulty of proving damages and the likely filing of renewed motions to dismiss. (Class Pls.' Br. 23).

This case involves difficult factual and legal issues which would have translated into

protracted litigation and accumulating expenses, in both time and money.  Accordingly, the Court finds that this <u>Girsch</u> factor weighs strongly in favor of approval.

### e.    Risk of Establishing Damages

This factor also "attempts to measure the expected value of litigating the action rather than settling it at the current time." <u>Cendant</u>, 264 F.3d at 238-39 (quoting <u>GM Trucks</u>, 55 F.3d at 816).  Plaintiffs' allegations of damages would require a complicated analysis involving sophisticated expert opinions, countered by Gallagher Defendants' own experts and resulting in a battle of the experts.  Plaintiffs acknowledge the risk that they may not recover, or may recover only a limited amount.  (Class Pls.' Br. 23).  Thus, the Court agrees that a significant risk exists in establishing both liability and damages, and concludes that this factor weighs strongly in favor of approval.

### f.    Additional <u>Girsh</u> Factors

The sixth factor concerns the risks of maintaining the class action through the trial and weighs somewhat in favor of approval of the settlement.  The class has been preliminarily certified for settlement purposes only, and if this case were to proceed to trial Gallagher Defendants contend that they would contest class certification on various grounds.  (Gallagher Defs.' Br. 27).  The Non-Settling Defendants have filed an opposition to Plaintiffs' motion for class certification.  Defendants claim that even if Plaintiffs obtain certification, the risk remains that the class could be decertified at a later stage.  <u>Id.</u>  Plaintiffs acknowledge Defendants' arguments in opposition to the motion for class certification, but contend that they will succeed with the certification of the class.  (Class Pls.' Br. 24).  However, since the motions have not been ruled upon by this Court, the outcome is still uncertain.

11

The seventh factor concerning the ability of defendants to withstand a greater judgment also slightly favors approval. In Cendant, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount sufficiently greater than the Settlement." Cendant, 264 F.3d at 240. Plaintiffs do not contend that the Gallagher Defendants could not withstand a larger judgment, however, they submit that many settlements are approved even where a settling party has the ability to pay a greater amount. See, e.g., Warfarin Sodium, 391 F.3d at 538; Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150-51 (D.N.J. 2004). The Gallagher Defendants, in addition to the multi-million dollar settlement amount, have committed to pay Class Counsel's attorneys' fees and litigation expenses and the expenses associated with implementing the Settlement Agreement. (Gallagher Defs.' Br. 7-8). In light of these considerations, the Court finds that this factor weighs slightly in favor of approval.

Lastly, the eighth and ninth factors concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation weigh in favor of settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (citation and quotations omitted). The Gallagher Defendants contend that the significant and immediate monetary and non-monetary benefits that will accrue to Settlement Class Members outweigh the risks and uncertainties that Plaintiffs will face at trial. (Gallagher Defs.' Br. 29). Further, the relief provided to Class Members is not subject to reduction for administrative expenses and attorneys fees. Id. at 7-8.

12

Plaintiffs submit that Class Counsel engaged economic experts to evaluate the possible range of damages, and that $28,000,000 represents a material percentage, considering the significant risks faced by Plaintiffs if litigation proceeds. (Class Pls.' Br. 25). As with the other factors, the Court finds that this favors settlement.

### 3.   Summary of Girsh Factors

In conclusion, the Court finds that factors one through five all weigh heavily in favor of approval of the Settlement. Factors six through nine weigh slightly or moderately in favor of approval. The Settlement was reached after arm's-length negotiations between experienced, capable counsel after significant confirmatory discovery. Consequently, the Court finds that none of the Girsch factors weigh against settlement. As the above analysis demonstrates, the Court concludes that the settlement of $28,000,000 represents an excellent result for the Class considering the substantial risks Plaintiffs face, the immediate benefits provided and the absence of any guarantee of a favorable verdict.

### 4.   Objectors Arguments

As stated above, only two objections were filed in opposition to the proposed Settlement Agreement. Of the two objections, only one, Private Care, Inc. ("Private Care"), challenges the sufficiency of the Settlement Agreement itself. Private Care asserts two principle arguments: 1) that the settlement amount of $28,000,000 is trivial; and 2) that the settlement claim form requests information that poses an undue burden to Settlement Class members. (Private Care Objection to the Proposed Settlement ("Private Care Objection") 1-2.) For the reasons discussed below, this Court finds that neither of Private Care's arguments militate against approval of the Settlement Agreement.

### a.   Objection to the Settlement Amount

Private Care first asserts that the settlement amount is trivial, given that its total insurance premiums over the settlement period amount to roughly ten percent of the $28,000,000 settlement amount. Id. at 1. Private Care provides no further support for its claim. This Court finds Private Care's argument to be unpersuasive in light of the immediate monetary and non-monetary benefits Class Plaintiffs would receive, the additional sums to be paid by Gallagher, and the challenges that Plaintiffs face in litigating this action further.

In addition to the $28,000,000 fund created under the proposed Settlement Agreement, Gallagher Defendants have agreed to pay $8,885,000 in plaintiffs' attorneys' fees, litigation expenses, and incentive awards to the twenty-five named plaintiffs. (Gallagher Defs.' Br. 8). Also, Gallagher Defendants have agreed to pay for the administrative costs associated with notifying the potential class members of the Settlement Agreement. Id. at 7. The Settlement Agreement also includes non-monetary relief that Class Counsel has stated "is of great consequence to the Settlement Class." (Class Pls.' Br. 11). Specifically, Gallagher Defendants have agreed to restrictions on certain alleged business practices, including prohibitions on: 1) accepting contingent compensation in any form; 2) "pay to play" arrangements; 3) "bid-rigging" arrangements; 4) reinsurance leverage transactions; and 5) inappropriate use of wholesale insurance brokers. Id. In addition, Gallagher Defendants have agreed to certain disclosure requirements to customers. Id.

As discussed above, Plaintiffs face significant risks in litigating this action further. In light of those risks, and in light of the fact that of the hundreds of thousands of mailed notices sent to proposed Settlement Class members, only one objection to the settlement amount was

filed, this Court concludes that the sum is fair and reasonable.

### b.    Objection to the Claim Form

Private Care also asserts that the Gallagher Settlement Claim Form ("Claim Form") is overly burdensome because it requests information to which the Gallagher Entities or other defendants have better access. (Private Care Objection 2). Private Care therefore objects to the information required by the Claim Form. Id.

The Claim Form requires commercial insurance claimants to provide the insurance company from which it purchased a policy, the policy number, the year of the policy's inception or renewal, and the premium paid. (First Amendment to Settlement Agreement, Ex. J. 2). For claims relating to employee-benefits policies, employer claimants are required to provide the number of covered employees, and the type of insurance purchased for each year in the settlement period. Id.

Gallagher Defendants assert that the Claim Form "is typical of those used in the settlement of class action litigations," that Settlement Class Members have a full six months to gather this data, and that assistance is available to potential Settlement Class Members. (Gallagher Defs.' Reply Br. 9).   The Court concludes that this is a reasonable amount of time in which to gather the necessary information and submit the forms.

### 5.    Plan of Allocation

In approving the Plan of Allocation of the Settlement ("Plan"), the Court must likewise determine whether the Plan is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  For purposes of allocation, the Plan divides the Settlement Class into six separate claimant groups: Commercial Class members who purchased or renewed commercial insurance either through a

15

Gallagher Entity ("Commercial Direct Claimants") or a Commercial Broker Defendant ("Commercial Conspiracy Claimants"), Employer members of the Employee Benefits Class who purchased or renewed employee benefits insurance either through a Gallagher Entity ("Employer Direct Claimants") or an Employee Benefit Broker Defendant ("Employer Conspiracy Claimants"), and all Employee members of the Employee Benefits Class who purchased or renewed employee benefits insurance either through a Gallagher Entity ("Employee Direct Claimants") or through an Employee Benefits Broker Defendant ("Employee Conspiracy Claimants").[4]  (Class Pls.' Br. 7-8).

Of the two objections raised in opposition to the proposed Settlement Agreement, only one raises any issues relevant to the Plan itself.  Van Enterprises, Inc. ("Van Enterprises") asserts that the Plan "creates antagonism within the class" and that there is "significant disparate treatment between" the six categories created in the Plan.  (Van Enterprises Objection to the Proposed Settlement ("Van Enterprises Objection") 20).  These arguments appear to be in reference to the certification of the class for settlement purposes, and not to the allocation itself. The Court addresses these issues below.  In the absence of any substantive objections to the Plan, this Court therefore concludes that the Plan satisfies the standard set forth in Federal Rule 23(e).

**B.    Class Certification for Purposes of Settlement**

In its Order preliminarily approving the settlement agreement, the Court conditionally certified the Settlement Class.  Rule 23 of the Federal Rules of Civil Procedure requires this

---

[4]    The Fund would be distributed among the Claimant subgroups as follows: Commercial Direct Claimants, 68%; Commercial Conspiracy Claimants, 13.2%; Employer Direct Claimants, 3.6%; Employer Conspiracy Claimants, 0.5%; Employee Direct Claimants, 13.3%; Employee Conspiracy Claimants, 1.4%. (Class Pls.' Br. 9).

Court to engage in a two-step analysis to determine whether it should certify a class action for settlement purposes. First, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Fed. R. Civ. P. 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the alternative requirements of Rule 23(b)(2) or 23(b)(3) are met. See Fed. R. Civ. P. 23(a) Advisory Committee's note. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619 (1997).

### 1.   The Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) provides that class members may maintain a class action as representatives of a class if they show the court that:

> (a) the class members are so numerous that joinder of all members is impracticable;
> (b) the action addresses questions of law or fact common to the class;
> (c) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and
> (d) the class representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

#### a.   Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if the class is so large that "joinder of all members is impracticable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." Cannon v. Cherry

17

Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999).

In this case, 288,182 notices were mailed to potential class members nationwide. (Gallagher Defs.' Reply Br. 3). "There can be no serious question that joinder of all these parties, geographically dispersed throughout the United States, would be impracticable." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 247 (S.D. Tex. 1978). The class thus easily satisfies the numerosity requirement, as "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement." Weiss v. York Hosp., 745 F.2d 786, 808 n.35 (3d Cir. 1984).

### b.   Commonality

Plaintiffs must demonstrate that there are questions of fact or law that are common to the class to satisfy the commonality requirement, though the Third Circuit has determined that the threshold to satisfy the requirement is "not high." Fed. R. Civ. P. 23(a)(2); In re School Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986). "[C]ommonality does not require an identity of claims or facts among class members;" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted). Class treatment is not precluded "[e]ven where individual facts and circumstances do become important to the resolution [of a case]." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994).

Due to the conspiratorial nature of allegations in antitrust and RICO actions, such cases often present common questions of law and fact and are frequently certified as class actions. See, e.g., In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 478 (W.D. Pa. 1999) (noting that

"allegations concerning the existence, scope and efficacy of an alleged conspiracy present

questions adequately common to class members to satisfy the commonality requirement")

(citation omitted); Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 231-32 (D.N.J. 2005)

(noting that "even a few common issues can satisfy this requirement where their resolution will

significantly advance the litigation" and finding commonality satisfied in a RICO class action);

Hoffman Elec., Inc. v. Emerson Elec. Co., 754 F. Supp. 1070 (W.D. Pa. 1991) (finding

commonality where both named Plaintiffs and class members sought to bring RICO and breach

of fiduciary claims).

        In this case, there are many common questions of law and fact.  These include, *inter alia*,

whether: (1) the Gallagher Defendants entered into a contract, combination or conspiracy to

allocate the market for sale of insurance; (2) the Gallagher Defendants' contract, combination or

conspiracy had the purpose and effect of reducing and unreasonably restraining competition in

the sale of insurance; (3) the Gallagher Defendants' conduct violated § 1 of the Sherman Act; (4)

the Gallagher Defendants engaged in a pattern of racketeering activity; and (5) the Gallagher

Defendants violated RICO.  (Class Pls.' Br. 32).  The commonality requirement is therefore

clearly satisfied.

### c.    Typicality

        "The typicality requirement is designed to align the interests of the class and the class

representatives so that the latter will work to benefit the entire class through the pursuit of their

own goals."  Barnes v. Am. Tobacco Co., 259 F.3d 127, 141 (3d Cir. 1998).  As with numerosity,

the Third Circuit has "set a low threshold for satisfying" typicality, holding that "[i]f the claims

of the named plaintiffs and class members involve the same conduct by the defendant, typicality

is established." Newton, 259 F.3d at 183-84; see also Baby Neal, 43 F.3d at 58. The typicality requirement does not "mandate[] that all putative class members share identical claims." Newton, 259 F.3d at 183; see also Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988).

Here, the claims made by named Plaintiffs and those made on behalf of the Settlement Class Members are indistinguishable, encompassing identical allegations that the Gallagher Defendants violated RICO, federal and state antitrust laws, and the common law obligations. These claims arise in each case from the same course of action taken by the Gallagher Defendants. Consequently, the named Plaintiffs' claims are typical of those brought by the Settlement Class Members at large. See, e.g., Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977) (finding that because "[t]he claims pressed by the representatives are identical to those which they press on behalf of the class generally," the named plaintiffs' claims satisfied the typicality requirement); Grasty v. Amalgamated Clothing and Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987), cert. denied, 484 U.S. 1042 (Jan. 25, 1988) (finding the typicality requirement met because the claims brought by the named Plaintiffs and those brought on behalf of the class "stem from a single course of conduct").

### d. Adequacy of Representation

The Third Circuit has held that the final requirement of Rule 23(a), that the class representatives "fairly and adequately protect the interests of the class," can be deemed met only after two factors are satisfied: (i) that counsel for the class is "qualified, experienced, and generally able to conduct the proposed litigation" and (ii) that the class representatives "must not have interests antagonistic to those of the class." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992); accord Georgine v. Amchem Products, Inc., 83 F.3d 610, 630 (3d

20

Cir. 1996); Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

As to the first factor, this Court has already assessed the qualification, experience and ability of the named Plaintiff's Co-Lead Counsel and determined that their attorneys are clearly "well qualified and experienced class action attorneys who have been involved in similar . . . litigation around the country." In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2007 WL 542227, at *14 (D.N.J. Feb. 16, 2007) (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 250 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004)). Nothing has been presented to this Court that would alter this assessment.

As to the second factor, in order to find an "antagonism between [named Plaintiffs'] objectives and the objectives of the [class]", there would need to be a "legally cognizable conflict of interest" between the two groups. Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat class action "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit." Flat Glass, 191 F.R.D. at 482 (citing In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 513 (S.D.N.Y. 1996)). Here, it is clear that the named Plaintiffs' interests are not antagonistic to those of the absent class members. The central questions in this case regarding the Gallagher Defendants' alleged conduct, and the impact of that conduct on both the named Plaintiffs and the absent class members, animates in an identical fashion the claims of both groups. In addressing these common questions, the named Plaintiffs have advocated as vigorously for the absent class members as they have for themselves. Consequently, the adequacy requirement has been met.

With this last requirement satisfied, it is clear that the class in this case has demonstrated

compliance with each of the four prongs of Rule 23(a).

### 2.    The Requirements of Fed. R. Civ. P. 23(b)(3)

The Court must next address the question of whether the class action also comports with the requirements of either Rule 23(b)(3) or Rule 23(b)(2).  The named Plaintiffs have asked this Court to consider only whether the class meets the standards set forth in Rule 23(b)(3), which requires the court to find both that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  As explained below, the class action in this case readily meets these requirements of predominance and superiority.

### a.    Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise"; instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  However, the "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate . . . ." Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985) (finding that, in the context of a securities class action, even the presence of individual questions as to the reliance of each individual class member did not negate the predominance of the class's common claims).

Given that antitrust class action suits, as discussed above, are particularly likely to contain common questions of fact and law, it is not surprising that these types of class action suits are also generally found to meet the predominance requirement with ease.  In Amchem, the Supreme

22

Court noted that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." 521 U.S. at 625. Moreover, "[a]ntitrust actions involving common question of liability for monopolization . . . have frequently been held to predominate for the preliminary stage of class certification." In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 29 (D.D.C. 2001). The Third Circuit has agreed with this analysis, and has indicated that because the clear focus of an antitrust class action is on the allegedly deceptive conduct of the defendant and not on the conduct of individual class members, common issues necessarily predominate. Warfarin Sodium, 391 F.3d at 528-29; accord In re Linerboard Antitrust Litig., 305 F.3d 145, 162 (3d Cir. 2002), cert. denied, 538 U.S. 977 (2003).

Here, as discussed in the sections on commonality and typicality, the identical claims of both the named Plaintiffs and the absent class members arise from the same set of facts regarding the alleged collusive and anticompetitive behavior of the Gallagher Defendants. Consequently, the predominance requirement is satisfied.

**b.    A Class Action is Superior to Other Available Methods**

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine, 83 F.3d at 632 (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc), cert. denied, 419 U.S. 885 (1974)). One consideration is the economic burden that class members would have to bear in bringing suits on a case-by-case basis; class actions have been held to be especially appropriate where it would be "it would be economically infeasible for [individual class members] to proceed individually." Stephenson v. Bell Atlantic Corp., 177 F.R.D. 279,

23

289 (D.N.J. 1997). Another consideration is judicial economy. In a case with many thousands or even millions of class members, whose individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252-53 (D.C. Tex. 1978). See also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it was costly, inefficient, and would burden the court system to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, the "efficacy of resolving all [of] plaintiffs' claims in a single proceedings is beyond discussion").

To litigate the individual claims of even a tiny fraction of the 288,182 potential class members would place a heavy burden the judicial system and require unnecessary duplication of effort by all parties. In addition, millions of documents have been produced and hundreds of depositions have been taken to this point in the litigation; as such, it would also not have been economically feasible for most of the class members to seek individual redress. The litigation of such claims in one action is thus far more desirable than numerous, separate actions litigating the same issues. The superiority requirement is therefore met in this case.

### 3.   Objections to Class Certification

Prior to making a final determination regarding class certification, the Court will address the arguments raised by one objector, Van Enterprises, which concern aspects of class

certification.

Van Enterprises challenges certification of the class for settlement purposes on several grounds. In support of its objection, Van Enterprises in essence argues that: 1) not all Class Plaintiffs have suffered a cognizable injury and therefore those Plaintiffs lack standing; 2) Plaintiffs can not demonstrate a predominance of common questions of law and fact sufficient to meet Fed. R. Civ. P. 23(b)(3); and 3) Plaintiffs can not meet the adequate representation requirement of Fed. R. Civ. P. 23(a). (Van Enterprises' Objection, 7-23). Despite Van Enterprises' claims, this Court will certify the class for settlement purposes.

### a.    Objections Concerning Standing

Van Enterprises first argues that Plaintiffs lack standing because the Settlement Class includes insureds who purchased insurance from insurers that are not alleged to be part of the conspiracy and Gallagher entities that are not accused of any wrongful act and are not alleged to be part of any conspiracy, and because Plaintiffs' allegations lack specificity with respect to injury. Id. at 7-10. For the reasons described below, the Court rejects these arguments.

In this Circuit, case law is clear that "[o]nce threshold individual standing by the [named plaintiffs] is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense." In re Prudential Ins., 148 F.3d at 306-07 (citation omitted). Thus, absent class members are not required to make a similar showing, and the "issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing." Id. at 307 (citation omitted).  The named Plaintiffs here have sufficiently alleged injury in fact – artificially inflated insurance premiums – as a result of the Gallagher Defendants' participation in the alleged customer allocation scheme and other alleged

25

conduct. (Second Consolidated Commercial Class Compl. ("Comm. Compl.") ¶¶ 326-52; Second Consolidated Employee Benefits Class Compl. ("EB Compl.") ¶¶ 239-70). Thus, contrary to Van Enterprises' assertions, unnamed Plaintiffs in the class need not make a separate showing of injury in fact, and standing is not an obstacle to certification of the class for settlement purposes.

**b.      Objections Concerning Predominance of Common Questions of Law and Fact**

Van Enterprises raises a host of arguments challenging whether Plaintiffs have met the commonality requirement of Fed. R. Civ. P. 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). For example, Van Enterprises challenges, *inter alia*, whether any antitrust injury is common to the class; whether Plaintiffs can show a uniform fraudulent representation sufficient to certify a RICO class; and whether common unjust enrichment issues predominate throughout the class. (Van Enterprises' Objection 10-19).

The commonality requirement is satisfied when the "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal, 43 F.3d at 56. Thus, this requirement "is easily met" and "members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." Id. As this Court has already explained, named Plaintiffs and absent class members are asserting identical claims that arise from the same set of facts regarding the alleged collusive and anticompetitive behavior of the Gallagher Defendants. Consistent with the law of the Third Circuit, this satisfies the commonality requirement of Fed. R. Civ. P. 23(a).

### c.   Objections Concerning Adequate Representation

Van Enterprises argues that the adequate representation requirement of Fed. R. Civ. P. 23(a) has not been satisfied because: (1) "some class members benefitted from the same conduct complained about by others in the class," and therefore a fundamental conflict exists within the Class; and (2) the Plan of Allocation creates "significant disparate treatment" between the six allocation groups. (Van Enterprises' Objection 19-20).

With respect to the first argument, Van Enterprises has not provided sufficient detail to the Court regarding the nature of any fundamental conflict that might exist. Van Enterprises argues that since not all Class Plaintiffs had insurance policies that were subject to contingent commissions, certain members of the class paid less for their policies than others. Id. at 20. Van Enterprises fails to demonstrate how this might result in less than adequate and vigorous representation by Class Counsel. With respect to the second argument, Van Enterprises also fails to identify for the Court the nature of any alleged disparate treatment created by the Plan of Allocation, or how this might create antagonism within the class. The Court therefore rejects Van Enterprises arguments with respect to adequacy of representation.

### 4.   Conclusion

Because the named Plaintiffs have satisfied all of the requirements under Fed. R. Civ. P. 23(a) and the requirements of Fed. R. Civ. P. 23(b)(3), this Court certifies the proposed class for purposes of this settlement.

## III.   CONCLUSION

For the foregoing reasons, the Court grants the Gallagher Defendants' and Plaintiffs'

Motion for Final Approval of Class Action Settlement and dismisses the Gallagher Defendants

from this case with prejudice.  The appropriate form of Order accompanies this Memorandum

Opinion.


Dated: August 31, 2007


GARRETT E. BROWN, JR., U.S.D.J.

28