**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE INSURANCE BROKERAGE ANTITRUST LITIGATION | MDL Docket No. 1663<br><br>Civ. No. 04-5184 (GEB) |
| IN RE EMPLOYEE-BENEFIT INSURANCE BROKERAGE ANTITRUST LITIGATION | Civ. No. 05-1079 (GEB) |
| This Document Relates To:<br><br>ALL ACTIONS | MEMORANDUM OPINION |

**BROWN, Chief Judge**

## INTRODUCTION

This matter comes before the Court upon Defendants'[1] Motion to Dismiss and Motion for Summary Judgment with regard to Plaintiffs' ERISA claims in the Second Consolidated Amended Employee-Benefit Class Action Complaint ("Second EB Complaint" or "SAC"). The Court has read and considered all documents filed and submitted and has decided the motions based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For

---

[1] Defendants consist of AIG, CIGNA, The Hartford, Metropolitan Life, Prudential and the Unum Group (formerly known as Unum Provident)(collectively "Defendants").

the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## **BACKGROUND**

This action involves numerous class actions filed against various insurance brokers and insurers. The class actions allege violations of federal and state antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Employee Retirement Income Security Act ("ERISA"), and common law. These class actions have been consolidated into the present action.

Plaintiffs filed their First Consolidated Amended Employee Benefits Class Action Complaint on August 15, 2005. After these causes of action were aligned and severed into two types of matters (one involving commercial property and casualty insurance coverages ("Commercial Case") and the other involving employee benefits insurance plans ("Employee-Benefits Case"), the Court consolidated all actions into two accordingly aligned dockets. See In re Ins. Brokerage Antitrust Litig., 04-5184 (GEB), Docket Entry No. 118 (D.N..J. May 25, 2005); In re Employee-Benefits Brokerage Antitrust Litig., 05-1079 (GEB), Docket Entry No. 20 (D.N.J. Aug. 8, 2005). Consequently, Plaintiffs filed one consolidated amended complaint per each respective docket, and then altered these two submissions by filing two corrected amended complaints. See In re Ins. Brokerage Antitrust Litig., 04-5184 (GEB), Docket Entry No. 201 (D.N.J. May 25, 2005); In re Employee-Benefits Ins. Brokerage Antitrust Litig., 05-1079 (GEB), Docket Entry No. 21 (D.N.J. Aug. 8, 2005).

The extensive facts and procedural history in this case have been set forth previously by the Court and are repeated only where relevant to the instant motion.

In the Court's October 3, 2006 Opinion, it found that Plaintiffs had alleged few facts to

demonstrate the necessary fiduciary status to support their ERISA claim.  However, in viewing Plaintiffs' allegations in a light most favorable to Plaintiffs, the Court found that Plaintiffs alleged enough facts to survive a dismissal.  In re Ins. Brokerage Antitrust Litig, 04-5184, (GEB), Docket Entry No. 720, at 40 (D.N.J. Oct. 3, 2006).  The Court further stated that Plaintiffs' ERISA claim would "be more appropriately resolved upon motions for summary judgment" when more facts would be available for analysis.  Id.  Accordingly, the Court ordered expedited discovery, leaving the issue of Defendants' fiduciary status to be addressed at summary judgment.  Id. at 40-41.

On May 22, 2007, Plaintiffs filed their Second Amended Complaint.  Plaintiffs allege that "the Broker Defendants conspired with the Insurer Defendants to allocate the business of plaintiffs and Class Members to the conspiring insurers, and to protect those insurers from competition for that business, in exchange for the payment of undisclosed fees, commissions and other kickbacks by the Insurer Defendants."  (Id. at ¶ 5).  Plaintiffs allege that these actions constitute a breach of Defendants' fiduciary duty owed to Plaintiffs and the class under ERISA Sections 502(a)(2) and (a)(3).  (Id. at ¶¶ 746-63).  Plaintiffs allege further that these actions violated ERISA's Prohibited Transactions provision under § 406(a)(1)(C), (a)(1)(D), and (b)(3).  (SAC. ¶¶ 746-69).

On June 21, 2007, Defendants filed the present Motion to Dismiss and For Summary Judgement with respect to the ERISA Count in Plaintiffs' Second Amended Complaint.  In re Employee-Benefits Ins. Brokerage Antitrust Litig., 05-1079 (GEB), Docket Entry No. 665 (D.N.J. June 21, 2007).  Defendants argue that summary judgement should be granted because Defendants were not ERISA fiduciaries with respect to the challenged conduct.  Defendants also argue that their lack of fiduciary status dooms Plaintiffs' Prohibited Transactions Claims.  Defendants also make several other arguments for granting summary judgment and also contend that Plaintiffs' claim

should be dismissed because Plaintiffs seek an improper remedy under ERISA. Because the Court grants summary judgment to Defendants based on the determination that Defendants were not ERISA fiduciaries with regard to the challenged conduct, we do not reach Defendants' other arguments for Summary Judgement or their Motion to Dismiss.

## DISCUSSION

### I.      Standard for a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

### II.     Second Amended Consolidated Complaint

#### A.     Plaintiffs' Amended Allegations

Plaintiffs allege that in conspiring with a network of Brokers to allocate and maintain their

employee benefit plans' insurance business in exchange for undisclosed contingent commissions and communication fees, Defendants breached fiduciary duties owed to Plaintiffs under ERISA § 404, 29 U.S.C. § 1104.  Pl.'s Opp. at 2; (SAC ¶¶ 5, 752-3).  According to Plaintiffs, Brokers were compensated based on the volume and profitability of the business they allocated to Defendants as well as for the "percentage of premium renewed."  Id.

Plaintiffs also allege that Defendants breached their fiduciary duty owed under ERISA by failing to disclose the contingent commissions, communication fees and other types of compensation on Schedule A of Form 5500, which is provided to ERISA plan participants. Id. at 3; (SAC ¶¶ 389-90). According to Plaintiffs, Defendants paid kickbacks and undisclosed compensation to Defendant Brokers with funds taken directly from plan assets.  Id.; Plaintiffs' Local Rule 56.1 Statement; Plaintiffs' Additional Disputed Facts ("Pltfs' Facts") Nos. 22, 48, 60.  To the extent that Broker's fees exceeded the initial cost built into the rate, Plaintiffs allege this excess cost was added to the premium charged to the insured.  Id.  Plaintiffs maintain that these costs were then allocated "across product lines."  Id.; (SAC ¶¶ 304-481).  According to Plaintiffs, Defendants intentionally withheld disclosing such payments on Schedule A of Form 5500  to avoid "expos[ing] to ERISA plan administrators the conflict of interest created thereby, as well as other aspects of the Defendants' scheme."  Id.; (SAC ¶¶ 389-90).

Plaintiffs also allege that Defendants' payment of contingent commissions to brokers violated ERISA's Prohibited Transactions provisions in violation 29 U.S.C. §1106(b)(3).  Id. at 4; (SAC ¶ 759).  Plaintiffs seek monetary relief pursuant to 29 U.S.C. §1132(a)(2) and equitable relief pursuant to 29 U.S.C. §1132(a)(3).

**B. Plaintiffs' Allegations of Defendants' Fiduciary Status**

5

Plaintiffs argue that discovery has revealed at minimum, a genuine issue of material fact as to whether Insurer Defendants were ERISA fiduciaries with respect to Plaintiffs' employee benefit plans.  Id. at 4.  In support of their argument, Plaintiffs point out that MetLife, Unum Provident ("Unum"), and CIGNA have all admitted to exercising discretionary authority with regard to administering claims under their respective policies to Plaintiffs.  Id.; (SAC ¶749); see also Plaintiffs' Local Rule 56.1 Statement: Employee Benefits Insurers' Purported Undisputed Facts ("Defs' Fact") Nos. 36-42, 53-57.

Plaintiffs argue further that each "Insurer Defendant is an ERISA fiduciary in the administration of plan benefits and management of plan assets" by virtue of "exercising 'discretionary authority, control or responsibility' over the eligibility, receipt, and payment of benefits; and the interpretation of policy provisions."  Id.  Plaintiffs maintain that each Insurer Defendant has retained the authority to make final decisions regarding claims for benefits.  Id. at 5.

Plaintiffs also allege fiduciary status on the part of Defendants with regard to "plan communications."  Id.  According to Plaintiffs, Defendants were legally obligated to disclose the Contingent Compensation being paid to brokers on ERISA Schedule A Annual Return/Report of Employee Benefit Plan ("Form 5500s"), which are filed with the Internal Revenue Service ("IRS") and Department of Labor ("DOL").  However, Plaintiffs aver that Defendants deliberately concealed these commissions, in derogation of statutory as well as their fiduciary obligations.  Id.

Plaintiffs also argue that several Defendants demonstrated their fiduciary status in exercising discretion to prepare and/or distribute "summary plan descriptions and other plan or benefit communications to participants."  Id.  According to Plaintiffs, Defendants "retained exclusive authority to approve changes, cancel or modify summary of benefits documentation."  Id.  Plaintiffs

6

also maintain that Defendants retained authority to respond to inquiries from employees regarding benefit coverage, provided statements to employees of their rights under ERISA, and "communicated to ERISA plans or plan participants that it serves in the capacity of an ERISA fiduciary." Id.

Plaintiffs argue further that there is a genuine issue of material fact as to whether Defendants are fiduciaries because they exercised discretion and control over plan assets, including employee contributions and group insurance contracts. Id. Plaintiffs also allege that most Insurer Defendants have acknowledged their ERISA fiduciary status in prior proceedings or have been found to be ERISA fiduciaries with regard to "insurance policies that were marketed, underwritten or sold to class members. Id. at 6.

III.   **Defendants' Motion to Dismiss**

Defendants argue that they are entitled to summary judgment because they were not acting as fiduciaries with respect to the conduct challenged by Plaintiffs in their Second Amended Complaint, namely the payment of contingent compensation to brokers and then factoring in this compensation into premium rates. In re Employee Benefit Ins. Brokerage Antitrust Litig., 05-1079, Docket Entry No. 671, at 12, 16 (Def.'s Opp. Br.); (see also SAC ¶ 781). Defendants argue that the challenged conduct in the complaint cannot form the basis of an ERISA complaint because in selling or renewing insurance products, they acted purely in their own interest, made no representation that they were acting on behalf of the ERISA plan, "and did not exercise any discretionary authority and require the plan to purchase [their] products." Id.

Defendants urge that any discretionary role they may have played in determining claims or paying benefits does not render them fiduciaries with regard to the challenged conduct. Id. at 17. While discretion exercised by Defendants in this area may make them "'claims fiduciaries,'"

Defendants argue this status is insufficient to support a claim for breach of a fiduciary duty in "non-claims related activities that involved no discretionary authority." Id.

Defendants deny assuming any fiduciary duty with regard to communicating with plan participants outside the area of claims administrations. Id. at 19. According to Defendants, the only areas where the evidence demonstrates that Defendants may have communicated with Plaintiffs outside of claims administration are with regard to "(a) confirming the accuracy of benefit descriptions the employer had prepared . . . and (b) provid[ing] materials describing employee benefits that employers might or might not decide to use." In re Employee Benefit Ins. Brokerage Antitrust Litig., 05-1079, Docket Entry No. 696, at 11-12 (Def.'s Reply Br.) Defendants maintain that these limited communications are insufficient to confer a fiduciary duty upon them. Id. Rather Defendants argue that Plaintiffs alone possessed discretionary authority with regard to communicating benefit plans. Id. However, Defendants argue that even if Plaintiffs were able to demonstrate that Plaintiffs possessed a fiduciary duty with regard to communicating benefit plans, it would not be helpful to Plaintiffs, because Plaintiffs do not allege that Defendants "failed to accurately describe or summarize the benefits provided to employees." Id. at 12-13.

Defendants also attack Plaintiffs' contention that Defendants are fiduciaries by virtue of Insurer Defendants' reporting obligations under Form 5500. Id. at 21-22. Defendants maintain that this argument for fiduciary status fails because Defendants reporting obligations under Form 5500 "entail purely administrative reporting tasks that do not involve discretionary authority." Id. at 22. According to Defendants, Schedules A and C of Form 5500 are "fill-in-the-blank style forms," to be filled out in accordance with detailed instructions from the IRS. As such, Defendants argue that in filling out these forms, they were not exercising any discretion, but instead were performing an

8

administrative task. Id. at 22-23. Defendants argue further that "Congress' creation of two separate

and distinct statutory schemes to remedy an ERISA reporting violation, on the one hand, and a

breach of ERISA fiduciary duty on the other," evidence that reporting violations were not intended

to invoke a fiduciary duty. Id. at 24.

Defendants similarly argue that Plaintiffs' Prohibited Transactions claim fails because

Plaintiffs cannot establish that Defendants were acting as fiduciaries in the payment of contingent

commissions. Id. at 25.


**Analysis**

To determine whether Defendants are ERISA fiduciaries, we first look to the statute. A

person is a fiduciary with respect to a plan if:

> (i) he exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets, (ii) he renders investment advice for a fee
> or other compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii) he has
> any discretionary authority or discretionary responsibility in the administration of
> such plan."

[29 U.S.C § 1002(21)].

"The linchpin of fiduciary status under ERISA is discretion." Curcio v. John Hancock Mut. Life

Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994). Specifically, "anyone [] who exercises discretionary

control or authority over the plan's management, administration, or assets . . . is an ERISA

'fiduciary.'" Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (U.S. 1993).

However, it is well settled that merely selling insurance to a plan by itself does not create a

fiduciary relationship under ERISA. Fechter v. Connecticut General Life Ins. Co., 800 F. Supp. 182,

197 (E.D. Pa. 1992). "Rather, a party becomes a fiduciary only if and to the extent that it exercises or has the power to exercise 'actual decision-making power' on behalf of a plan with respect to the management or administration of the plan or the investment or disposition of its assets." Id.; see also Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1149 (3d Cir. 1989)( auditor was not a fiduciary because it lacked "direct or indirect decision-making authority with respect to the affairs of the plan."). In addition, as the statutory definition indicates, fiduciary status under ERISA is not absolute. Moench v. Robertson, 62 F.3d 553, 561 (3d Cir. 1995). A party may possess fiduciary obligations with regard to one aspect of a plan, but have no fiduciary duties with regard to other activities within the plan. See Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 217 (8th Cir. 1993), cert. denied, 115 S. Ct. 1964 (1995)("[A] court must ask whether a person is a fiduciary with respect to the particular activity in question")(quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), cert. denied, 122 L. Ed. 2d 359, 113 S. Ct. 1051 (1993)). Therefore, in assessing whether a party breached a fiduciary duty, the threshold issue is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (U.S. 2000).

Plaintiffs allege that Defendants conspired with Brokers to allocate the business of Plaintiffs and Class Members to Defendants and to shield Defendants from competition for their business "in exchange for undisclosed fees, commissions and other kickbacks" which were paid to Brokers by Insurer Defendants. Pl.'s Opp Br. at 2; (SAC ¶ 5). In doing so, Plaintiffs claim Insurer Defendants breached fiduciary duties owed to Plaintiffs under ERISA. Id.; (¶¶ 746-63). In order to determine

10

whether Plaintiffs can maintain this claim, we must determine whether Defendants possess a fiduciary duty with regard to this alleged illegal conduct. See Pegram, 530 U.S. at 226.

We agree with Defendants that they are not ERISA fiduciaries with regard to administering Plaintiffs' employee benefit plan. While Defendants concede they possessed discretion in the administration of claims, see Def's Br. at 2, it does not follow that Defendants are ERISA fiduciaries with regard to administering Plaintiffs' employee benefit plan overall. See Kerns v. Benefit Trust Life Ins. Co., 992 F.2d at 217. In their role as claims administrators, Defendants certainly exercise discretion as Plaintiffs alleges in determining whether someone is eligible for benefits, whether the policy allows for the payment of benefits, and whether to make such payments. See Pl.'s Br. at 13. However, such discretionary authority is of no matter because Plaintiffs do not allege that Defendants breached a fiduciary duty with regard to making a claims determination. Plaintiffs state on page 12 of their opposition brief that they will demonstrate that Defendants' "fiduciary duties are not so limited," however none of the authority cited to by Plaintiffs in the following pages stand for the proposition that possessing a fiduciary duty in claims administration is equivalent to possessing an ERISA fiduciary duty with regard to administration of the employee benefit plan as a whole. In absence of any such authority, Plaintiffs are unable to support their claim that Defendants are fiduciaries with regard to administering Employee Benefits Plans beyond claims administration.

Plaintiffs argue that Defendants, by virtue of their fiduciary status possessed a fiduciary duty to disclose contingent commissions they paid to brokers and breached this fiduciary duty by failing to do so. Pl.'s Opp. at 15-20. Plaintiffs cite to Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1993) as well as Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., 93 F.3d 1171, 1180 (3d Cir. 1996) to support their claim that Defendants

11

owed Plaintiffs a duty to disclose contingent commission under ERISA.  Id.  We find these cases to be readily distinguishable.

In Bixler, the widow plaintiff contacted the general manager ("Welsh") of her deceased husband's company, who was the alleged administrator of her husband's benefit plan, to inquire into whether there were any death benefits available to her. 12 F.3d at 1302. Welsh accurately informed Mrs. Bixler that no death benefits were available, which the Court noted would have ordinarily satisfied a plan administrator's fiduciary obligations. Id. However, because Welsh may have been aware of Mrs. Bixler's unpaid medical expenses, the court found that as an alleged plan administrator, Welsh may have breached a fiduciary duty in failing to inform Mrs. Bixler of the option to apply for COBRA coverage, which would have provided her with reimbursements. Id. As the Third Circuit explained in a later opinion, "Lucinda Bixler's requests for information, coupled with the fiduciary's understanding of her status and situation, imposed a duty to accurately convey all information relevant to her circumstances." Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 461 (3d Cir. 2003)(explaining Bixler, 12 F.3d at 1300)).

In Glaziers, Janney, a Securities Brokerage Firm forced an employee ("Lloyd"), who was the financial advisor to the plaintiff fund, to resign after it learned that Lloyd had altered a check to appear as if it was written earlier.  93 F.3d at 1176.  Following Lloyd's resignation, Lloyd opened up his own Securities Firm.  The plaintiff fund, unaware of Lloyd's improprieties regarding the altering of the check, discontinued working with Janney, to continue to work with Lloyd at Lloyd's new firm.  Lloyd eventually stole assets from the plaintiff's fund totaling over $500,000 and wasted over $2,000,000 in additional assets. The Third Circuit found that an issue of fact existed as to whether Janney, as a fiduciary, possessed a duty to disclose to the fund while the fund was still a

12

client of Janney's, its knowledge of Lloyd's improprieties regarding the altered check.  Id. at 1017.
Glaziers thus stands for the proposition that "a fiduciary has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."  Horvath, Inc., 333 F.3d at 461(citing Glaziers 93 F.3d at 1182).

The present case is quite different than the two discussed above.  Here, Plaintiffs provide no support for their allegation that Plaintiffs inquired into the fees in question, but were misled as to the nature of these fees.  See Bixler, 12 F.3d at 1300.  Even if Plaintiffs had provided support for this assertion, they have not demonstrated that as in Bixler, because of an awareness of Plaintiffs' vulnerabilities, Defendants possessed a duty to disclose the commissions.  Id.  Indeed Plaintiffs fail to demonstrate how disclosing the alleged commissions would have prevented Plaintiffs from making a harmful decision regarding their coverage.  See Glaziers 93 F.3d at 1182.  As a result, Plaintiffs are unable to support their claim that Defendants were duty bound under ERISA to disclose the contingent commissions in question.

The Court is also not persuaded by Plaintiffs' argument that Defendants breached a fiduciary duty in allegedly failing to properly disclose contingent commissions on Schedules A and C of Form 5500.  The Third Circuit has "repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act." Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995); see also Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1168 (3d Cir. 1990); Berger v. Edgewater Steel Co., 911 F.2d 911, 920 (3d Cir. 1990).  Plaintiffs cite no published cases to support their claim that Defendants violated fiduciary duties owed to Plaintiffs under ERISA in

improperly filling out Form 5500s.[2]   Only "where the plaintiff can demonstrate the presence of extraordinary circumstances" is a substantive remedy available.  Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 74 (3d Cir. 2007)(citing Jordan v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997) (quoting Ackerman, 55 F. 3d at 124)).  "Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions."  Ackerman, 55 F.3d at 125.  The court in Engers v. AT&T, 428 F. Supp. 2d 213, 239 (D.N.J. 2006) likened a showing of extraordinary circumstances to "an equitable estoppel claim under § 502(a)(3)(B) of ERISA, 29 U.S.C.S. § 1132(a)(3)(B)," which requires a showing of "(1) the existence of a material representation; (2) reasonable and detrimental reliance on the misrepresentation, and (3) extraordinary circumstances."  Id.  As a matter of law, Plaintiffs have not demonstrated extraordinary circumstances under Ackerman.  Even if Plaintiffs are able to demonstrate that Defendants purposely mislead them in inaccurately filling out Form 5500s, Plaintiffs utterly fail to demonstrate that they relied on this misrepresentation and were substantively harmed.  Plaintiffs' failure to demonstrate reliance is fatal to a claim for extraordinary circumstances under Ackerman.

Plaintiffs also argue that Defendants are liable as fiduciaries because Defendants "exercised authority and control over the disposition of plan assets." Pl.'s Opp. at. 28.  First, Plaintiffs suggest that Defendants possessed ERISA fiduciary status by maintaining control over plan assets in part,

---

[2] We note Plaintiffs' citation to In re RCN Litig., 2006 U.S. Dist. LEXIS 12930 (D.N.J. 2006) in support of their claim that Defendants possessed a fiduciary obligation to accurately disclose information on Form 5500s.  However as the RCN court only discussed this proposition in dictum, and Plaintiffs cite no other authority finding a fiduciary duty related to the filling out of Form 5500s, we are constrained to follow the case law of this circuit discussed herein, which provides no substantive remedy for an ERISA reporting violation.

through retaining the right to unilaterally change the terms of insurance plans. Id. at 28-29. Second, Plaintiffs maintain that Defendants' acceptance of Plaintiffs' payments for insurance premiums through payroll deductions manifests Defendants' control over plan assets and therefore confers fiduciary obligations upon Defendants. Id. at 28-29. Defendants counter that while they may have retained the right to unilaterally alter or terminate an insurance policy, Defendants never possessed the discretion to make these changes on behalf of Plaintiffs. Rather, Defendants assert that any actions they took in amending the insurance plans were carried out purely in their own interest, and as such, never converted Defendants into fiduciaries. Def.'s Reply Br. at 13. Defendants also maintain that "an insurer's general assets do not constitute the assets of an ERISA plan, and payments made from those assets are not subject to any ERISA fiduciary duty." Id. at 15. The Court agrees with Defendants on both points.

Plaintiffs cite Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co., 713 F.2d 254, 258 (7th Cir. 1983) for the proposition that an insurance company becomes an ERISA fiduciary by maintaining the right to unilaterally amend a group policy. Pl.'s Opp. at 28-29. This case is readily distinguishable from the one before us. The insurers in Chicago Bd. Options Exchange, Inc. retained the authority to amend the plaintiffs' annuity contract and did so, reinvesting some of the plaintiffs' assets, while representing to the plaintiffs that these changes to the contract were being carried out to better serve the beneficiaries "'without sacrificing any of [the beneficiaries'] existing rights.'" 713 F.2d at 256. The resulting amendment locked the Plaintiffs into an investment (that the Plaintiffs found unfavorable) for the following ten years. The Seventh Circuit found that by locking the Plaintiffs' into this investment, the insurers had maintained control over the type of investment that the Plan could make. Id. at 260. As such, the court found that the

Insurer possessed fiduciary obligations with regard to the plaintiffs' assets. Id.

Defendants never possessed the type of discretionary authority to alter the plans at issue on behalf of Plaintiffs, as seen in Chicago Bd. Options Exchange, Inc. Accordingly Plaintiffs' analogy to that case does not persuade us that Defendants are liable as ERISA fiduciaries because they possessed control over Defendants assets. It should also be noted that the court in Chicago Bd. Options Exchange, Inc., was careful to limit defendants' fiduciary obligations to "actions taken in regard to amending the contract." 713 F.2d at 259. Because Plaintiffs do not allege that Defendants violated any fiduciary obligation in amending any contract, this case is of even further dubious import to Plaintiffs.

We are also unpersuaded by Plaintiffs' argument that Defendants' acceptance of insurance premium payments made through payroll deductions manifested Defendants' control over Plaintiffs' assets, thereby conferring fiduciary status upon them. See Pl.'s Opp. at 29-30. Plaintiffs cite no case finding an insurance company to be an ERISA fiduciary by virtue of accepting premium payments from its beneficiaries into its general assets. Rather, Plaintiffs cite to cases where employers or other entities held employee contributions in trusts and managed those assets separately from their other assets. See id. However Plaintiffs fail to make any showing that Defendants held payments made by Plaintiffs in trust. Without making such a showing, Plaintiffs cannot demonstrate that Defendants were fiduciaries by virtue of having control over Defendant's assets.

Because Defendants were not fiduciaries with regard to the alleged conduct in Plaintiffs' complaint, Plaintiffs are also unable to sustain their Prohibited Transactions claim against them. Plaintiffs allege that Defendants violated ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), which provides in pertinent part: "[a] fiduciary with respect to a plan shall not cause the plan to engage in

a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest." Plaintiffs attempt to distinguish <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882 (U.S. 1996), arguing that unlike <u>Lockheed</u>, where the Supreme Court found that a plan sponsor could amend a plan without incurring fiduciary liability under ERISA (and thereby "wear two hats"),  here Defendants did not wear "two hats," but allegedly used their status as fiduciaries to conspire with Brokers. Pl's Opp. at 32-33. Indeed, Plaintiffs argue that Defendants' position is more similar to the one rejected in <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1045 (5th Cir. 1995). Plaintiffs' argument with regard to both cases is unpersuasive. As discussed, Defendants have performed fiduciary and non-fiduciary roles with regards to the plans at issue, and have therefore "worn two hats." <u>See</u> <u>Payonk v. HMW Industries, Inc.</u>, 883 F.2d 221, 225 (3d Cir. 1989). Contrary to Plaintiffs' interpretation, in <u>Lancaster</u>, the Fifth Circuit Court of Appeals found that an insurance agent and his company were fiduciaries because the agent misled trustees who had come to rely on him because he effectively managed and administered the plan. Because Defendants have exercised no similar discretion with regard to managing the plans in question in this case, <u>Lancaster</u> is not helpful to Plaintiffs and their Prohibited Transactions Claim fails. <u>Lancaster</u>, 55 F.3d at 1048.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgement is granted. An appropriate form of Order accompanies this Opinion.

Dated: January 14, 2008

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.